FILED

11/22/2021

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 19, 2021

## STATE OF TENNESSEE v. JOSEPH LAWRENCE STREET

**Appeal from the Circuit Court for Rutherford County
No. F-79278    David M. Bragg, Judge**

---

### No. M2021-00036-CCA-R3-CD

---

The defendant, Joseph Lawrence Street, appeals the denial of his Tennessee Rule of Criminal Procedure 35 motion to reduce the sentence imposed for his 2018 convictions of automobile burglary. Discerning no error, we affirm.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Brittney Hollis, Assistant Public Defender, for the appellant, Joseph Lawrence Street.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Jennings H. Jones, District Attorney General; and Dana Minor, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The record in this case is a mess. Two sets of judgment forms supplemented to the appellate record, neither of which contains an indication that they have been corrected or amended, were filed on March 23, 2018. The table of contents reflects that the second set of judgment forms that appears in the second supplemental technical record was "received on 5/17/18 but marked filed 3/23/18 (note the corrected box is not marked on the judgments filed)." We glean from these various judgments that the defendant pleaded guilty on March 23, 2018 to nine counts of automobile burglary in exchange for the following sentences:

| Count | Sentence | Alignment |
|-------|----------|-----------|
| 1 | Dismissed | |

| 2 | Dismissed | |
|---|---|---|
| 3 | Two years' probation | |
| 4 | Two years' probation | Concurrent with Count 2<br>Consecutive to Counts 10 and 11 |
| 5 | Two years' probation | Concurrent with Count 6<br>Consecutive to Counts 3 and 4 |
| 6 | Two years' probation | Concurrent with Count 5<br>Consecutive to Counts 3 and 4 |
| 7 | Four years' probation | Concurrent with Counts 8 and 9<br>Consecutive to Counts 5 and 6 |
| 8 | Four years' probation | Concurrent with Counts 7 and 9<br>Consecutive to Counts 5 and 6 |
| 9 | Four years' probation | No alignment indicated |
| 10 | Two years TDOC | No alignment indicated |
| 11 | Two years TDOC | Concurrent with "Ct. 1" |

The first judgment form for Count 3 indicates that the sentence imposed in Count 3 is to be served consecutively to Counts 1 and 2. The second set indicates that the sentence imposed in Count 3 is to be served consecutively to the two-year sentence of confinement in Counts 10 and 11 but also that the term of supervised probation is to commence "after Ct. 1&2." A third judgment form for that count, filed on August 20, 2018, contains no indication of sentence alignment. The first judgment form for Count 5 indicates that the probationary term for that count is to commence "after Ct. 5&6." The supplemental record contains a March 23, 2018 order dismissing "Cts. 10-15" and a second order, also dated March 23, 2018, dismissing "Cts. 1 & 2." The agreed order[1] incorporated by reference into all the judgments indicates that the defendant is to serve two years' incarceration followed by 10 years' probation "upon expiration of other counts." The sentences imposed via the judgment forms, however, result in a total effective sentence of two years' incarceration and eight years' supervised probation. The record does not contain the transcript of the guilty plea submission hearing or any plea documents. Indeed, for reasons that are not apparent, the record originally forwarded to this court contained little of the record of the proceedings in this case.

A probation violation warrant issued on June 28, 2019, alleged that the defendant had violated the terms of his probation by garnering new Davidson County charges of assault of an officer, driving without a license, evading arrest, resisting arrest, felony evading arrest, simple possession or casual exchange of a controlled substance, and aggravated burglary in March 2019 and by testing positive for the use of both cocaine and

---

[1] Two agreed orders, both marked with a filing date of March 23, 2018, appear in the supplemental record, but they appear to be identical.

marijuana in January 2019. This warrant alleges that the defendant was then serving a probationary term of "1 year 1 month" for convictions of automobile burglary imposed on August 7, 2018, in Counts 10 and 11.

At the January 9, 2020 hearing on the violation warrant, the defendant testified that it was his understanding that he was on probation for several convictions that carried a 10-year effective sentence. He agreed that he was sentenced to serve the first of the series of sentences in TDOC and that he had been released on determinate release. He said that he had garnered new charges in Davidson County and that those charges had been resolved. The defendant claimed that he and his wife "had got into it or whatnot at the time, and I didn't have a place to go and whatnot. And, you know, I had relapsed on the drugs." He acknowledged having committed the crimes with which he had been charged, explaining, "I was just fending for myself and needed money. So, I had committed the crime and whatnot though. But at the end of the day when I was sober, I figured out that I had made a lot of mistakes . . . ."

The defendant also admitted that he had failed a drug screen but claimed that he had sought help for his drug addiction with the help of his family He said that his "mentor," Sherry Jackson, had gotten him "into a halfway house. So, I will get out and go to a halfway house. And I'm also in a drug outpatient program." The defendant exhibited to his testimony a letter indicating that he had been accepted into a program at Keystone Recovery. He asked the court "for a little mercy" and the opportunity to "get that help instead of going back to prison." The defendant also asserted that he had "a situation with the prison thing and whatnot, like I'm an ex-gang member. And I got stabbed over 50 something times getting out of prison, out of saying that I want to being out of that gang."

During cross-examination, the defendant acknowledged that he pleaded guilty to the automobile burglary charges in March of 2018 and that he had agreed to serve the first two years of his effective sentence in TDOC. He agreed that he was placed on determinate release on August 9, 2018. The defendant identified the certified copies of the judgments entered with regard to the charges that he garnered in Davidson County while on probation in this case. All the convictions had an offense date of February 5, 2019. He said that Davidson County prosecutors had extended a plea offer that disposed of the 2019 offenses as well as "the offenses that I had already had and I was fighting from 2017. They just gave me a whole package deal for that whole ordeal." He admitted that he had burglary charges pending in Davidson County at the time he pleaded guilty to the automobile burglary charges in this case.

The defendant conceded that after he tested positive for the use of drugs, he "was able to talk about rehab" with his probation officer, who told him "to check myself into the Elam outpatient program with my judge that's in Nashville. And that's what I was

-3-

doing. I was on a waiting list." He admitted that he was arrested before he could get off the waiting list. The defendant again acknowledged that he had "violated and . . . broke a lot of rules" and that he had "caught a lot of felonies" but insisted that "this is my first violation" and that he "should get that help instead of doing the time." The defendant said that the 12-year community corrections sentence imposed pursuant to his plea agreement in Davidson County was aligned concurrently with the 10-year sentence in this case.

At the conclusion of the hearing, the trial court indicated that it was inclined to "leave him on Community Corrections in Nashville," "make him do either an intensive outpatient program or an inpatient program," and "[m]aintain his employment." The court said that it would "check on him in six months. And then in six months, if he hasn't done anything, he's going to go serve." To effectuate the desired outcome, the court released the defendant on his own recognizance to report for his community corrections sentence in Davidson County and ordered the case reset for a status hearing in six months. The trial court found that the defendant had violated the terms of his release but agreed to reserve "sentencing in this matter" until June 5, 2020. Pending the new hearing, the defendant was to live in a sober living facility or inpatient treatment facility, enroll in an intensive drug treatment program, and obtain and maintain employment. The court warned the defendant that this was "your opportunity to show me you can live in the community without causing problems."

An "amended warrant" issued on September 3, 2020, indicates that the defendant was convicted on March 23, 2018, of "Auto Burglary x 9" and placed "on probation for a term of 10 years." This warrant alleged that the defendant violated the terms of his probation by garnering new Wilson County charges of unlawful possession of a weapon, simple possession of a controlled substance, possession of drug paraphernalia, and driving on a revoked license.

At a September 24, 2020 hearing, the prosecutor summarized the events since the trial court had released the defendant: "Since that time, he had picked up new charges. And then in court last time he failed a drug screen. He had left court, come back the next day, and Your Honor took him into custody."

The defendant's girlfriend, Karema Johnson, testified that she and the defendant "had left last time on the 2nd" because Ms. Johnson had cancer and had begun to feel sick while standing outside the courthouse "and I had to go." Ms. Johnson said that the defendant's behavior during his release "has been wonderful" and that "[h]e was going to his classes until the quarantine and, you know, the Coronavirus and all that went on. So, they was not letting him come to class." She said that the defendant had been helping her care for her children and caring for her "while I'm doing chemo," adding that the defendant

-4-

was "just a different person than he was last year." Ms. Johnson asked the court "to give him another chance" and said that the defendant could live with her if he was released.

During cross-examination, Ms. Johnson said that she was "[n]ot really" surprised that the defendant had failed a drug screen "when he came to court about two weeks ago."

The defendant testified that he had been trying to get accepted into a sober living or halfway house since the January 9, 2020 hearing but that his community corrections supervisor in Davidson County had "told me that by me being on Community Corrections that I wasn't eligible for R.S.P. program for the State to pay for it." He insisted that he had "been working on everything, trying to get into a halfway house ever since then." He said that he had been accepted into a facility and that, in the meantime, he had been attending drug treatment classes through his Davidson County community corrections placement. The defendant reported that he was working through "a daily temp service" and that he had not been able to begin his general education diploma classes due to the stay-at-home orders issued during the COVID-19 pandemic.

The defendant acknowledged that he had garnered new charges in Wilson County but said that he was "still fighting all those charges." He claimed that he "ended up catching those charges by helping a friend try to move her belongings from out of Wilson County, and we got pulled over. And the police found the weapon inside of a bag." The defendant insisted that the police did not find the weapon on his person and that his friend "also said she is taking the charge." The defendant testified that the Wilson County charges of "driving without a license and the drug paraphernalia, both of those were dismissed." As to his failing the drug screen when he returned to court for his status hearing, the defendant said, "I'm still going through a lot or whatnot though from . . . when you first let me out or whatnot though. I have been going from house to house or whatnot until I met Ms. Johnson." He added that he was "going through a divorce thing right now and haven't seen my kids since I had left from you in January and whatnot. And I had went back down again and relapsed, and I started smoking again." He insisted, however, that he was "pretty sure" he could "stop all that by me going to this sober living house."

During cross-examination, the defendant conceded that he had asked the trial court for leniency in January 2020 and that he had received it. The defendant acknowledged that, despite the previous grant of leniency, he had failed to comply with the terms of release set by the trial court. He insisted that residence in a sober living facility would "help me out." He conceded that the facility to which he had been accepted required payment of $1,900 for the first month and that he had only saved $700 toward that cost. He said, however, "I know for a fact that I can get the rest from my family though." He

admitted that, due to COVID-19-related closures, he had not been subjected to a drug test for the five months preceding the test he took, and failed, before his previous court hearing.

At the conclusion of the hearing, the trial court observed that, despite the COVID-19-related closures, it had "been putting people in halfway houses since January. I have been putting people in sober living houses since January. . . . And [the defendant] hasn't done that. He's done what's been convenient for him." The court also observed that the defendant had "picked up new charges, which he has blamed on somebody else." The court ordered that the defendant serve the balance of his sentence in confinement but said that if "DC4," a program the defendant said he was already participating in on an outpatient basis, would admit the defendant to "their inpatient residential program," the court would grant the defendant a furlough for purposes of entering that program.

On December 2, 2020, the defendant moved the court, pursuant to Tennessee Rule of Criminal Procedure 35, to reduce his sentence. In support of his motion, the defendant asserted that although he had been rejected by the DC4 inpatient residential treatment program due to his pending Wilson County charges, he had been accepted to "the Lighthouse Safe Harbor program in Memphis, TN, which is a 6 month faith based program." The defendant also reiterated his concerns, raised at the January 2020 revocation hearing, about his safety should he be returned to TDOC. The defendant asked the court to "reduce his sentence and allow him to [be] furloughed to the Lighthouse Safe Harbor program or to reduce the length of the Defendant's actual sentence."

At the December 4, 2020 hearing on the Rule 35 motion, the defendant testified that he had been rejected by the inpatient drug treatment program "DC4" "[b]ecause of my pending charges that I'm still fighting in Wilson County. They said that I have to take care of that first." Similarly, he had not been accepted to "Mission Teens" in Crossville because of the pending Wilson County charges, for which he was out on bond. The defendant also testified that he feared for his safety should he be forced to return to prison, reiterating that he had been "stabbed over 50 times" when he left the gang with which he had been previously affiliated. He said that it was his understanding that, if the court reduced his sentence length to less than 10 years, he would be eligible for a workhouse placement.

During cross-examination, the defendant said that he believed that he had been treated unfairly by the court because the court "automatically put my sentence . . . straight into effect. I didn't get like a year to serve day-for-day or any of that though. I didn't get any kind of offer at all."

Upon questioning by the trial court, defense counsel indicated that the defendant "had a capias" from Wilson County for missing court even though he was

-6-

incarcerated in Rutherford County and that, as a result, "[h]e does have a hold for him out of Wilson County. So, I imagine if he's released from here, he'll be transported there."

At the conclusion of the hearing, the trial court denied the motion, noting that it was unclear how the defendant could "go to any other program until he gets through with that Wilson County case." The court lauded the defendant's efforts to find a treatment program but said the defendant "needs to get these cases in Wilson County resolved." The court stated that it understood the defendant's concerns for his safety but said "that's between the Sheriff, the Department of Corrections, and Wilson County it seems to me."

In this appeal, the defendant asserts that the trial court erred by denying the motion to reduce his sentence, arguing that he is entitled to a reduction in the length of his sentence or a furlough into a drug treatment program based upon his drug addiction and concerns for his own safety. The State asserts that the trial court did not err.

Tennessee Rule of Criminal Procedure 35 provides that "[t]he trial court may reduce a sentence upon motion filed within 120 days after the date the sentence is imposed or probation is revoked." Tenn. R. Crim. P. 35(a). "The court may reduce a sentence only to one the court could have originally imposed." Tenn. R. Crim. P. 35(b). "The intent of this rule is to allow modification only in circumstances where an alteration of the sentence may be proper in the interests of justice." Tenn. R. Crim. P. 35, Advisory Comm'n Comments. When the defendant did not plead guilty in exchange for an agreed sentence, "Rule 35 functions simply as a second opportunity for a defendant to make a plea for leniency. It provides the trial court an opportunity to again consider, 'after reflection or upon receipt of new probationary reports or other information,' whether the initial sentence is too severe for any reason." *State v. Patterson*, 564 S.W.3d 423, 434 (Tenn. 2018) (citation omitted). When, as is the case here, however, the defendant pleads guilty in exchange for an agreed sentence, he is "required" to provide "post-sentencing information or developments warranting a reduction of the initial sentence" to avail himself of Rule 35 relief. *Id.* We review the trial court's decision to grant or deny a Rule 35 motion for an abuse of discretion. *State v. Irick*, 861 S.W.2d 375, 376 (Tenn. Crim. App. 1993).

As to his request for a reduction in the length of his sentence, we find that the defendant failed to present any post-sentencing information or developments that would justify a reduction in the 10-year effective sentence imposed pursuant to his plea agreement and that, in consequence, the trial court did not abuse its discretion by denying his request. As to his request for relief in the form of a furlough to attend drug treatment, the record supports the finding of the trial court that, due to pending charges in Wilson County at the time of the court's ruling, the defendant could not actually be furloughed into such program. Moreover, based upon the defendant's abysmal record of compliance with the

terms of release into the community, we cannot say that the trial court abused its discretion by refusing to reduce his sentence by altering the terms of service.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE